IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **3:CV-06-2265** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| C.O. R. GARRISON, | : | |
| Defendant | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Johnny Cyrus, formerly an inmate at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"), filed, *pro se*, the instant civil rights action under *Bivens*[1], pursuant to 28 U.S.C. § 1331, on November 21, 2006.[2] The Plaintiff has also filed an application for leave to proceed *in forma pauperis*. (Doc. 4).[3]

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff has also filed five other *Bivens* actions with this Court, namely 06-1698, 06-1665, 06-1697, 06-2022, and 06-2052, M.D. Pa.

[2]After he filed this case, Plaintiff was transferred to FMC-Butner, North Carolina. All of Plaintiff's claims in this case occurred while he was confined at FCI-Allenwood.

[3]By separate Order, we granted Plaintiff's Motion for *in forma pauperis*. (Doc. 9).

Plaintiff's claim was set forth on two handwritten pages. *See* Doc. 1.[4] The Complaint alleged that on November 9, 2006, Defendant Corrections Officer ("CO") Garrison, in retaliation, pushed him into a wall when he was going through a metal detector. Plaintiff averred that he hurt both of his knees. Plaintiff claimed that Defendant Garrison made him face the wall for 20 minutes before Garrison let him leave. Plaintiff then stated that on November 11, 2006, Defendant Garrison, in retaliation, went into his cell and trashed his personal property, and deliberately destroyed his legal papers. Plaintiff averred that after destroying his legal papers, Defendant Garrison told him "I'm going to toss up your cell every time I'm here. If you don't stop filing on my fellow brothers and works (sic), shit will get worses (sic). I will trash you boy." (*Id.*, p. 1). Plaintiff also stated that Defendant Garrison took all of his medication and pain pills. (*Id.*, p. 2).

Plaintiff alleged that he sent former Defendant, Warden Hogsten, a BP-9 Administrative remedy form and an Inmate Request to staff form about Defendant Garrison's conduct.

Plaintiff claimed that the conduct of both Defendants violated his First Amendment and Eighth Amendment rights. (*Id.*). Plaintiff made no claim for relief.

Plaintiff named as Defendants Warden Hogsten and CO Garrison. The stated two individual Defendants were both employed at FCI-Allenwood during the relevant times of this case.

---

[4] In his Complaint, the Plaintiff indicated that he sent Warden Hogsten a BP-9 Administrative remedy and Request to Staff about Defendant Garrison's alleged attack on him. He did not indicate if he fully exhausted the grievance procedure available at FCI-Allenwood. (Doc. 1, p. 2).
  As we previously noted, since Plaintiff's claim in this case arose on November 9, 2006, it did not seem possible that he could have exhausted all of his available BOP Administrative remedies before he filed this action. We also noted that Plaintiff was deemed as being well aware of the PLRA exhaustion requirement based on his four prior cases he filed with this Court.

Warden Hogsten was not alleged to have played any role in the retaliatory trashing of Plaintiff's cell, in the destruction of his legal papers, and in the taking of his medications. Nor was Warden Hogsten alleged to have played any role in the November 9, 2006 assault incident or to have engaged in any conduct amounting to a violation of Plaintiff's Eighth Amendment Constitutional rights. Plaintiff only claimed that he sent Warden Hogsten an Administrative remedy form and a Request form about Defendant Garrison's conduct. Plaintiff did not state if he received a response. Plaintiff did not state the personal involvement of Warden Hogsten with respect to his Eighth Amendment excessive force claim or with respect to his First Amendment retaliation claim. Rather, the Warden was named in this case based solely on *respondeat superior*.

Since Warden Hogsten was not alleged to have played any role in the November 9, 2006 assault incident, or to have engaged in any conduct amounting to a violation of Plaintiff's Constitutional rights, on December 15, 2006, we recommended that the Warden be dismissed from this case. (Doc. 6). Further, we indicated in our Report and Recommendation screening Plaintiff's Complaint under the Prison Litigation Reform Act of 1995[5] (the "PLRA"), pursuant to 28 U.S.C. §1915(e)(2)(B), that the case should be allowed to proceed only with respect to the First Amendment retaliation claim and Eighth Amendment excessive force claim against Defendant Garrison. We found that Plaintiff's pleading contained fatal deficiencies as to Warden Hogsten, namely the failure to state an Eighth Amendment claim and a First Amendment retaliation claim against this Defendant.

---

[5] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

On January 9, 2007, the District Court issued an Order and adopted our Report and Recommendation. (Doc. 8). Plaintiff's claims were dismissed as to Warden Hogsten. Subsequently, we issued an Order on January 10, 2007, in which we granted Plaintiff's *in forma pauperis* motion and directed service on Defendant Garrison. (Doc. 9). Defendant Garrison was then served. (Doc. 10).

On March 19, 2007, Defendant Garrison filed a Summary Judgment Motion pursuant to Fed.R.Civ.P. 56(b). **(Doc. 14).** Defendant filed his support Brief and Statement of Material Facts ("SMF") with exhibits on April 2, 2007. (Docs. 16 and 17). Plaintiff filed his opposition Brief and Exhibits on April 16, 2007. (Docs. 18 and 19, respectively).[6] Defendant Garrison's Summary Judgment Motion is ripe for disposition.

## II. Section 1331 Standard.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent

---

[6]Copies of Plaintiff's exact same opposition Brief and exhibits were captioned and filed in this case as well as three of his other cases pending before this Court, namely 06-1665, 06-1698 and 06-2051. We have previously issued a Report and Recommendation in Case No. 06-2051 recommending that Defendant's Summary Judgment Motion be granted. On May 25, 2007, the District Court granted Defendant's Summary Judgment Motion. (Doc. 25). We will issue separate Reports and Recommendations with respect to Plaintiff's other pending cases.

of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### III. Motion for Summary Judgment  Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts  to the nonmoving party. *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862

F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**IV. Material Facts.**

Since, as stated, Defendant has filed his SMF in support of his Summary Judgment Motion (Doc. 17, ¶'s 1.-19.), and his facts are properly supported by citation to the BOP regulations and to evidence, we shall adopt as our own all of Defendant's facts contained in his SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exhibits. (Docs. 18 & 19). To the extent that Plaintiff's evidence disputes Defendant's facts detailed in his SMF, we shall not adopt Defendant's facts as our own.[7] We find that Plaintiff, in his response to Defendant's SMF, which is contained in his Brief, has not properly responded, paragraph by paragraph, to any of Defendant's SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 18).[8] As stated, Defendant has offered evidentiary support for his stated

---

[7] As discussed below, we do not find that any of Plaintiff's exhibits, Exs. 1-3, dispute Defendant's SMF and his evidence. (Doc. 19). Rather, Plaintiff's exhibits are articles addressing alleged abuses by the BOP against other inmates in other prisons.

[8] Plaintiff is deemed as being well aware of all of the Local Rules of this Court based on his several cases he has filed in the M.D. Pa. In fact, in his Brief (Doc. 18), Plaintiff only

factual paragraphs contained in his SMF. (Doc. 17, pp. 1-4). Defendant has shown that Plaintiff did not fully and properly exhaust his BOP administrative remedies with respect to the two stated claims against him. Since Defendant's SMF's are supported by evidence and since Plaintiff has not properly responded to them, we shall accept all of Defendant's SMF's as undisputed. We shall incorporate them herein by reference and shall not repeat them herein. (Doc. 17, pp. 1-4).

In his Brief, Plaintiff responds to Defendant's SMF regarding the BOP Administrative Remedy process and its statements that Plaintiff failed to properly exhaust his Administrative remedies with respect to his present claims. Plaintiff simply states that the BOP administrative remedy "procedure is a joke." (Doc. 18, p. 1, ¶ 1.). Plaintiff does not dispute Defendant's SMF and its statements that both of the two (2) Administrative remedies Plaintiff filed after the November 9 and 11, 2006 incidents alleged in this case, that may have been relevant to Defendant's alleged conduct, were rejected due to Plaintiff's improper filing of them.[9] Rather, Plaintiff questions the appropriateness of the rejections he received from the BOP Regional Director stating that the matters raised in his

---

responds to ¶'s 1.-5. of Defendant's SMF. Indeed, his Brief does not contain any legal argument and does not even respond to Defendant 's remaining ¶'s of his SMF, ¶'s 6.-19., Doc. 17.

[9]Defendant's SMF shows that Plaintiff also filed a third Administrative remedy after the dates in question, but that this remedy involved an appeal of a DHO decision. (Doc. 17, p. 3, ¶ 's 10.-11.). Only two of his Administrative remedies after the dates at issue involved staff conduct. In his SMF, Defendant notes that the specific staff conduct which was the subject of Plaintiff's two (2) stated Administrative remedies is not known, since actual copies of rejected Administrative remedies are not maintained. Defendant's evidence supports this claim. (Doc. 17, p. 4, n. 1 & n. 2  and Ex. 1, ¶'s 10., 13. and 14.). However, Defendant has established through his evidence that the stated two (2) administrative remedies Plaintiff filed after the November 2006 incidents are the only possible ones that could relate to Plaintiff's claims asserted in this case.

administrative remedies were not sensitive, since he alleged assaults, threats and harassment. (Doc. 18, p. 3). Thus, Plaintiff argues that his Administrative remedies claiming threats and assaults should not have been rejected by the Regional Office, as they undisputedly were rejected, since they were sensitive issues. (*Id*.). Significantly, Plaintiff does not dispute Defendant's evidence, which shows that he never properly re-filed his two Administrative remedies, despite being advised how to properly proceed. (Doc. 17, pp. 3-4)..

Plaintiff also states that he has been retaliated against by BOP staff members that he has filed Administrative remedies against and filed civil actions against. (Doc. 18, pp. 1-2). Plaintiff states that staff members "make your Administrative remedys (sic) disappear and you hear nothing at all about it." Plaintiff states that he indicated on his civil actions filed with this Court that his Administrative remedies were never answered because BOP staff never filed them. He states that he went "to the next level outside of jail for help and they rejected it at that level." He states that prison staff are "not going to let you file on they (sic) friends" in the prison. Plaintiff states that "Administrative remedys (sic) should be run by inmates or an outside agency so it will be filed." (*Id*., p. 2). In his Brief, Plaintiff concludes that the BOP Administrative Remedy process "is a very corrupt BOP system." (*Id*., p. 4).

Significantly, Plaintiff does not state in his Brief if any of his two (2) rejected Administrative remedies he received from the Regional Office raised his two claims he asserts against Defendant Garrison in this case. Nor does Plaintiff state that any of his Administrative remedies which allegedly disappeared and were not filed by staff involved his claims against Defendant Garrison. Further, Plaintiff does not implicate Defendant Garrison with any alleged improper handling and

failing to file his Administrative remedies. Moreover, Plaintiff does not dispute Defendant's evidence which shows that he was instructed how to properly proceed with respect to his administrative remedies, and that he failed to properly re-file them. (Doc. 17, pp. 3-4).

Consequently, we accept as undisputed Defendant's SMF's and find that they are all supported by evidence. We find that it is undisputed that, of the two (2) possible Administrative remedies raising Plaintiff's instant claims, which Plaintiff filed after the alleged incidents in this case, neither was properly filed and neither was exhausted. Nor does Plaintiff's evidence, Exs. 1-3 filed with his Brief (Doc. 19), contest Defendant's SMF. Plaintiff's exhibits are copies of three articles about other inmates in the custody of the BOP, at other prisons, and relate to the BOP staff's alleged poor treatment of these other inmates. None of Plaintiff's exhibits deal with Plaintiff's alleged mistreatment by BOP staff, and none of his exhibits controvert our Defendant's SMF's, which show that Plaintiff did not exhaust his Administrative remedies with respect to this two claims against Defendant Garrison. Thus, we find Plaintiff's exhibits to be irrelevant to this case and find that they do not contest Defendant's evidence. Therefore, we accept all of the stated facts contained in Defendant's SMF (Doc. 17, ¶'s 1.-19.) since they are supported by its evidence, and since they are not controverted by Plaintiff's response to Defendant's SMF or by his evidence (*i.e.*, his three (3) Exhibits), and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[10] Therefore, we adopt the following undisputed facts

---

[10]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

derived from Defendant's SMF (Doc. 17) as our own and incorporate them herein by reference: Paragraphs 1.-19.

As stated, while Plaintiff generally argues that his Administrative remedies regarding assaults, threats and harassment by staff should not have been rejected as non-sensitive issues by the Regional Office, he does not show that either of these Administrative remedies related to the unconstitutional conduct he alleges against Defendant Garrison in this case. Nor does Plaintiff explain why he did not properly re-file either of the stated two (2) Administrative remedies after he was undisputedly advised and instructed how to properly file them. Since Plaintiff undisputedly failed to file the stated two administrative remedies, we find that he has not exhausted his present claims against Defendant Garrison.

## V. Discussion.

As we have repeatedly noted in our prior Reports and Recommendations when screening Plaintiff's cases, it is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D. Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the

Defendant has the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

We find that Defendant Garrison has met his burden and has shown that Plaintiff's Eighth Amendment and First Amendment claims against him which arose in November 2006, *i.e.* his excessive force claim on November 9, 2006, and the November 11, 2006 retaliation claim, were not properly exhausted. Defendant has shown that Plaintiff did not pursue all of his available BOP administrative remedies before he filed this action. Indeed, Plaintiff is well aware of the PLRA exhaustion requirement based on our screening of his prior cases he has filed with this Court.

Since Defendant has correctly stated the BOP Administrative Remedy process in his Brief (Doc. 16, pp. 3-4), and since his evidence has detailed it (Doc. 17, Ex. 1, ¶'s 5.-8.), we shall not repeat it herein. Further, Plaintiff does not dispute the BOP Administrative Remedy process as outlined in Defendant's Brief. As stated, Plaintiff only questions why his unspecified Administrative remedies were rejected by the Regional Office as not being sensitive when he states they involved assaults and threats by unnamed staff. While Plaintiff does not show that either of the two rejected Administrative remedies had anything to do with his claims against Defendant Garrison, he still had available recourse with respect to his two (2) stated Administrative remedies, according to Defendant's undisputed evidence, in that he could have re-filed them properly as he was instructed to do. Thus, we find that, to the extent that Plaintiff is construed as arguing futility with respect to the exhaustion of his claims against Defendant Garrison, this contention should not be found to excuse Plaintiff's undisputed failure to exhaust his Administrative remedies. As stated, Plaintiff has offered no reason or evidence as to why he did not properly re-file his Administrative remedies

after he was advised and instructed how to do it.  In any event, as stated below, the PLRA bars a futility exception to the exhaustion requirement.  *See Fortune, supra* at * 7.

As Defendant recognizes, pursuant to *Spruill*, "[a] procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim."  (Doc. 16, p. 7).  As this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a); *see Woodford v Ngo*, 126 S.Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002).  "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted).  "The benefits of exhaustion can be realized only if the prison grievance system si given a fair opportunity to consider the grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  *Id*. at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.  Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

> The PLRA's exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner lawsuits, as well as afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit. *Woodford*, 126 S.Ct. at 2387-88 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA exhaustion requirement is satisfied if the Plaintiff files a grievance and appeals the denial of the grievance to the highest level possible, giving the prison "fair notice" of the claim and an opportunity to remedy it. To provide fair notice of a claim, the plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party or parties. *See Pack v. Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Although neither the Third Circuit Court of Appeals nor the Supreme Court has defined how specific an inmate's administrative grievance must be to place the prison on "fair notice" of a claim prior to pursuing it in federal court, the Supreme Court has held that the prisoner's compliance with the agency's applicable administrative remedy process should be the yardstick for making such an assessment. *Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

We agree with Defendant (Doc. 16, pp. 8-9), and find that, based on the undisputed evidence, Plaintiff did not exhaust his First Amendment retaliation claim and his Eighth Amendment excessive force claim he asserts in this case. Defendant has established, through his uncontested evidence, that Plaintiff has failed to exhaust either one of the two (2) possible administrative remedies he filed regarding his claims in this case. Thus, we shall recommend that Defendant's Summary Judgment Motion be granted.

**VI. Recommendation.**

Based on the above, it is respectfully recommended that Defendant Garrison's Summary Judgment Motion **(Doc. 14)** be granted since Plaintiff has failed to exhaust his retaliation claim under the First Amendment and his excessive force claim under the Eighth Amendment against this Defendant. It is further recommended that Judgment be entered in favor of Defendant Garrison and against Plaintiff.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 6, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **3:CV-06-2265** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| C.O. R. GARRISON, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 6, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: July 6, 2007**